IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ROSA CARPENTER, *et al.*, | ) | |
| | ) | CASE NO. 4:16-cv-1609 |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| K-MART CORPORATION, | ) | KATHLEEN B. BURKE |
| | ) | |
| Defendant. | ) | |
| | ) | **MEMORANDUM OPINION & ORDER** |

## I. Introduction

This is a negligence action governed by Ohio law.[1] Plaintiffs Rosa and Christopher Carpenter, a married couple, seek to recover damages for injuries that resulted when Rosa Carpenter slipped and fell on an unidentified orange liquid that was on the floor of Defendant K-Mart's store while she and her husband were shopping on June 1, 2014.

K-Mart has filed a Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56 asserting that it is entitled to judgment as a matter of law because the spill was open and obvious and, therefore, under Ohio law it had no duty to warn.[2] Doc 20. Plaintiffs filed an Opposition (Doc. 26) and K-Mart replied. (Doc. 28). As discussed more fully below, there is no genuine issue of material fact regarding whether the spill was an open and obvious hazard. Under Ohio law, it was, and K-Mart therefore did not owe Plaintiffs a duty to warn. Because there is no

---

[1] Plaintiffs filed this action on May 31, 2016, against Defendant K-Mart, Store No. 4939 and K-Mart Corporation in the Trumbull County Court of Common Pleas. Doc 1. On June 24, 2016 Kmart removed the matter to this Court based on diversity jurisdiction. Doc. 1.

[2] K-Mart also argues that it did not have notice or constructive notice of the spill. Doc. 20, pp. 11-14. Because the Court finds that the spill was open and obvious, it does not reach this argument.

1

genuine issue of material fact with respect to whether the hazard was open and obvious, K-Mart is entitled to summary judgment.

## II. Background Facts

Rosa Carpenter ("Carpenter") described the facts preceding the accident in her deposition testimony. Doc. 19-2 (Rosa Carpenter deposition). She testified that, on June 1, 2014, she and her husband were shopping at K-Mart to purchase specific items on their shopping list. *Id.,* pp. 24-25, 27. They entered K-Mart through one of the main doors. *Id.*, p. 27. They went by the "Wall of Values" when they first entered the store and together proceeded up and down the various grocery aisles.[3] *Id.*, pp. 28-29, 35.

After approximately thirty minutes in the store, the Carpenters completed their grocery shopping and were separately walking toward the checkout area. *Id.*, pp. 37, 38. Carpenter walked down an aisle with the Wall of Values on her left and, on her right, a series of tables positioned at an angle somewhat perpendicular to the Wall of Values. *Id.*, pp. 37, 42. As she walked, she looked at the items on the Wall of Values to her left and the cookies and bread on the tables to her right to see if she wanted to buy any items. *Id.*, pp. 42, 52. There were no other shoppers in the aisle. *Id.*, p. 49. Carpenter was not pushing a shopping cart; rather, her husband, walking parallel to her and on the other side of the tables, pushed the cart. *Id.*, pp. 45, 49.

While Carpenter was walking down the aisle, she felt her left foot slip and she fell, injuring her right knee and ankle. Doc 19-2, pp. 56-57. When she was on the floor, she noticed for the first time that there was a puddle of liquid and that she was sitting in it. *Id.*, p. 45.

---

[3] Carpenter had been in the K-Mart store numerous times in the past. Doc. 19-2, p. 23. The Wall of Values was in the grocery department and Carpenter was familiar with the layout of the grocery department. *Id.*, pp. 24, 32. In their brief, Plaintiffs describe the "Wall of Values" as "an area of promotional and/or sale merchandise." Doc. 26, p. 1. Defendants state that the Wall of Values is "where sales merchandise was displayed." Doc. 20, p. 3.

Carpenter's husband did not see her fall but came to her aid when he heard her fall. Doc. 19-3, pp. 12. The Carpenters continued to the checkout counter and told the checkout clerk about Carpenter's fall. Doc. 19-4, p. 13 (Deposition of Polly Wodogaza, the then-operations manager on duty). The checkout clerk notified Wodogaza and Wodogaza and Carpenter's husband walked to the spill. *Id.*, pp. 13, 15-16. There is no dispute that the spill was an unidentified, orangeish-brown liquid and that it took up almost one floor tile, which is one square foot. *Id.*, p. 16; Doc 19-2 pp. 45-50; Doc. 22, ¶3 (Wodogaza Declaration). Observable from the photographs later taken by the Carpenters and attached to Carpenter's deposition is that the floor tiles appear to be a whitish-gray color with black specks. *See, e.g.*, Doc. 19-10 (photograph of floor tiles); Doc. 19-2, p. 39-40.

### III. Summary Judgment Standard of Review

Rule 56 of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. The movant "bears the initial responsibility of informing the district court of the basis for its motion, identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which it believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett¸* 477 U.S. 317, 323 (1986) (internal quotations omitted).

After the moving party has carried its initial burden of showing that there are no genuine issues of material fact in dispute, the burden shifts to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–587 (1986). "Inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the

motion." *Id.* at 587 (internal quotations and citations omitted). However, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586. The non-moving party must present specific facts that demonstrate there is a genuine issue of material fact for trial. *Id.* at 587. "The 'mere possibility' of a factual dispute is not enough." *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 582 (6th Cir. 1986).

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). "A genuine issue for trial exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Muncie Power Products, Inc. v. United Technologies Automotive, Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 248). Thus, for a plaintiff to avoid summary judgment, "there must be evidence on which a jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. Accordingly, in determining whether summary judgment is warranted, a judge generally asks "whether there is evidence upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed." *Id*. (citation omitted).

### IV. Law

This case involves the duty owed by a shopkeeper to its invitees. In Ohio, "[a] shopkeeper owes business invitees a duty of ordinary care in maintaining the premises in a reasonably safe condition so that its customers are not unnecessarily and unreasonably exposed to danger." *Paschal v. Rite Aid Pharmacy, Inc.*, 480 N.E.2d 474, 475 (Ohio 1985); *see also Presley v. City of Norwood*, 303 N.E.2d 81, 83 (Ohio 1973). "A shopkeeper is not, however, an insurer of the customer's safety." *Paschal*, 480 N.E.2d at 475. Thus, a store has no duty to warn when a danger is open and obvious. *Id*.; *Armstrong v. Best Buy Co.,* 788 N.E.2d 1088, 1091

(Ohio 2003). A danger is open-and-obvious when it is "observable," i.e., "is discoverable or discernible by one who is acting with ordinary care under the circumstances." *Hissong v. Miller*, 927 N.E.2d 1161, 1166 (Oh.Ct. App. 2010) (citations omitted). Courts employ an objective, not subjective, standard when determining whether a hazard is open and obvious. *Id*. Whether the plaintiff actually saw the hazard prior to being injured is not determinative. *Id*.

Ohio courts have recognized that there may be "attendant circumstances" that "divert the individual's attention from a hazard and therefore excuse her failure to observe it." *Johnson v. Southview Hosp.*, 2012-Ohio-4974, ¶ 16, 2012 WL 5292988, at *4 (Oh. Ct. App. Oct. 26, 2012) (citing *Olivier v. Leaf & Vine,* 2005–Ohio–1910, ¶ 22). Attendant circumstances encompass any distraction the individual encounters that causes her to reduce the degree of care that an ordinary person would exercise. *Id*.; *see also McGuire v. Sears, Roebuck and Co.*, 693 N.E.2d 807, 810 (Ohio Ct. App. 1996). They do not include situations regularly encountered in a retail setting. *Id*., at 811.

### V. Analysis

K-Mart argues that it did not owe Carpenter a duty to warn of the spill because the spill was open and obvious. The Carpenters contend that the spill was not open and obvious because of attendant circumstances—K-Mart's Wall of Values distracted its customers by attempting "to attract its patron's attention in order to purchase merchandise." Doc 26, p. 3. In support of their argument, Plaintiffs rely on a single case, *Youngerman v. Meijer, Inc*., No. 15732, 1996 WL 531628 (Ohio Ct. App. Sept. 20, 1996).

As detailed above, the spill in this case was a puddle of unidentified orangeish-brown liquid, almost one foot square, in the middle of the store aisle devoid of other shoppers, on a whitish-gray-colored floor. In other words, the spill was observable, i.e., "discoverable or

discernible by one who is acting with ordinary care under the circumstances." *Hissong*, 927 N.E.2d at 1166; *Andler v. Clear Channel Broadcasting, Inc.*, 670 F.3d 717, 725 (6th Cir. 2012). *See also Cintron-Colon v. Save-A-Lot*, 2014 Ohio 4574, ¶¶ 12-14, 2014 WL 5306788, at **3-4 (Ohio Ct. App. Oct. 16, 2014) (bright yellow liquid on a store's white floor was open and obvious as a matter of law); *Venneri v. Marc Glassman, Inc.*, 2013 Ohio 560, ¶ 13, 2013 WL 620265, at *3 (Ohio Ct. App. Feb. 14, 2013) (long, green plant stem lying on a cream-colored store floor was open and obvious as a matter of law); *c.f. Elson v. Wal-Mart Stores, Inc.*, 2017 WL 1546883, at *4 (S.D.Oh. April 28, 2017) (issue of fact existed regarding whether dark-colored berries on a dark floor near a dark rug were open and obvious); *Middleton v. Meijer, Inc.*, 2010 Ohio 3244, ¶¶ 2, 17, 2010 WL 2706303, at *1, 4 (Ohio Ct. App. July 9, 2010) (issue of fact present regarding whether a clear puddle of laundry detergent on a light colored floor was open and obvious).

Plaintiffs argue in their brief that the spill was not observable because no one saw the spill prior to Carpenter's fall. Doc. 26, p. 3. But they present no evidence that any person, either an employee of the store or a customer, walked down the aisle or in the area of the spill and failed to see the spill. They provide no other argument or evidence to support their position that the spill was not observable.[4] Instead, they point to attendant circumstances that purportedly caused a distraction, rendering the spill not open and obvious. Doc. 26, pp. 3-4.

---

[4] The following exchange occurred at Carpenter's deposition:

> Q: How is it that you didn't see [the spill] as you were walking down the aisleway? Do you have any explanation for that?
> A. Because I was looking at the wall of value[s].
> Q. Had you been looking, you would have seen it, right?
> A. If I looked at my feet while I walk, yes.
> Q. Okay. Well, if you had looked out ahead of you, you would have seen it, correct?
> A. No.
> Q. Why not?
> A. I don't know.

6

The only attendant circumstance Carpenter identifies is the fact that the spill was in the aisle called the Wall of Values, which included sale items designed to attract shoppers' attention. Doc. 26, pp. 3-4. But "when people go into a store, they normally expect to find merchandise on display....if the mere existence of merchandise were enough to negate the open and obvious doctrine, the [attendant circumstance] exception would swallow the rule." *Novik v. Kroger Co.*, 2011 WL 5354264, at *7 (Oh. Ct. App. Nov. 7, 2011) (quoting *Williams v. Lowe's of Bellfontaine*, 2007–Ohio–2045, at ¶ 23 (Oh. Ct. App. Apr. 30, 2007)); *see also McGuire*, 693 N.E.2d at 498 (if "any and all displays that are customarily encountered in retail settings" could be broadly labeled distractions, every case would have to go to the jury; instead, a plaintiff overcomes the open and obvious doctrine "only where [she] offers evidence of particular circumstances rendering a particular display or area of display foreseeably unsafe."). Carpenter describes a K-Mart display that is customarily encountered in a retail setting, i.e., an aisle dedicated to sale items. She does not offer evidence demonstrating that the Wall of Values aisle was foreseeably unsafe. *See id*. In other words, she has not presented evidence of attendant circumstances sufficient to overcome the open and obvious doctrine.

Plaintiffs' reliance upon *Youngerman* is misplaced. In *Youngerman*, the plaintiff was pushing her cart through the frozen foods section of a grocery store when she slipped and fell in a large puddle of water that had accumulated from a leaking freezer. *Id*. at *1. The court found that a genuine issue of fact prevented it from concluding, as a matter of law, that the spill was open and obvious. The court described how supermarkets provide carts for shoppers to push ahead of them, "heaped with items" obstructing their view. *Id*. at *9. The court also commented

---

Doc. 19-2, p. 51. The above exchange is not evidence that the spill was unobservable because Carpenter did not explain why she answered that she would not have seen the spill had she looked out ahead of her.

7

that shoppers were often distracted by overhead signs, which they must read to find their purchases, and that their "attentions are often diverted from the floor because they are scanning the packed shelves to locate the food items and brands that they desire" and to check which items are on sale. *Id*. The court observed,

> Nevertheless, we do not suggest that these distractions relieve customers of their duty to exercise ordinary care in maneuvering through grocery stores. We only conclude that these distractions should be taken into account in determining whether the customer exercised ordinary care under the circumstances. The customer's actions should be judged against whether a customer exercising ordinary care under those circumstances would have seen and been able to guard him or herself against the condition.

*Id*.

The *Youngerman* court found the following facts, which are not present in this case, significant in determining that an issue of fact existed as to whether the spill was open and obvious: (1) the spill was water, a clear liquid; and (2) the plaintiff had testified that her view was impeded by her cart. Those facts relied on by the court in *Youngerman* are not present in this case. First, in this case, the liquid on the whitish-gray floor tile was not clear; it was orangish-brown colored and, thus, visible on the whitish-gray tile. Second, Carpenter was not pushing a shopping cart. Thus, her view was not impeded by a store-provided cart.

The *Youngerman* court also found persuasive the plaintiff's testimony that she was "distracted" because she was trying to locate "a particular food item on the packed shelves of the grocery store." *Id*. Carpenter, unlike the plaintiff in *Youngerman*, did not state that she was distracted while scanning packed shelves looking for a particular food item. Instead, Carpenter testified that she and her husband had been in the store for about thirty minutes; they had finished selecting the specific items on their shopping list; and they were walking towards the checkout counters. Doc. 19-2, p. 42 ("I was looking at the stuff on the wall [of values], but we

8

were walking to check out."). Carpenter was looking at the Wall of Values on her left and the baked goods on the tables to her right and did not look in front of her:

> Q: And at no time did you look in front of you?
>
> A: No, I don't believe so. I just looked at the stuff on the table and then looked at the stuff on the wall.

Id., p. 52. Carpenter's testimony depicts a shopper who, after having selected all items on her shopping list, casually perused the shelves while she walked to the checkout counter without looking in front of her and without a shopping cart to impede her view. Carpenter's reliance upon *Youngerman* is misplaced because the facts that the court in *Youngerman* relied upon to find an issue of fact in that case are not facts that are present in this case.[5]

Based on the foregoing, the Court concludes that Plaintiffs have failed to demonstrate a genuine issue of material fact regarding whether the spill was open and obvious. Accordingly, K-Mart is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56; *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (to avoid summary judgment, the non-moving party must present specific facts that demonstrate there is a genuine issue of material fact for trial).

## VI. Conclusion

For the reasons explained above, the Court **GRANTS** Defendant K-Mart's Motion for Summary Judgment (Doc. 20).

IT IS SO ORDERED.

Dated: August 2, 2017

Kathleen B. Burke
United States Magistrate Judge

---

[5] Moreover, in *Armstrong*, the Ohio Supreme Court reiterated that courts considering the open and obvious doctrine focus on "the nature of the dangerous condition itself, as opposed to the nature of the plaintiff's conduct in encountering it." 788 N.E.2d at 1091. Thus, consideration of the plaintiff's conduct is not relevant to the question whether a hazard is open and obvious.